**In Proceedings for the Reorganization of a Railroad.**

**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70-250.**

United States District Court,
D. Massachusetts.

March 22, 1971.

See also D.C., 317 F.Supp. 1249.

---

Charles W. Mulcahy, Jr., Boston, Mass., for trustees.

Lewis Weinstein, Foley, Hoag and Eliot, Boston, Mass., Covington & Burling, Wash. D. C., for petitioner's creditors.

F. G. Fisher, Hale & Dorr, Boston, Mass., debtor.

Robert W. Meserve, Charles W. Bartlett, and Paul W. Cherington, Boston, Mass., Trustee.

OPINION

FRANCIS J. W. FORD, District Judge.

The trustees of the debtor corporation petition for authorization to apply to the Interstate Commerce Commission for leave to abandon two lines of railroad located in New Hampshire.

The first of these lines is one of approximately 71.8 miles between Concord and Lincoln. The expense to the debtor for maintenance of way and structures

on this line was approximately $98,000.-00 in 1969, $55,000.00 for the first seven months of 1970, and $14,400 for August—September, 1970. Maintenance work has been kept to a minimum for some years, and if the line were to be maintained in safe operating condition for more than another year, extensive maintenance work would be required. The projected maintenance of way costs over the next five years are, respectively, $196,600.00, $199,400.00, $191,700.00, $76,500.00 and $73,700.00.

Further expenses allocable to the line have been $24,000.00 in 1969 and $20,-900.00 for the first nine months of 1970 for maintenance of equipment, $101,-000.00 in 1969 and $75,100.00 for the first nine months of 1970 for allocable transportation costs, and $60,500.00 for 1969 and $32,100.00 for the first nine months of 1970 for freight car hire.

Total expense of the operation of the line for 1969 was $283,600.00 and for the first nine months of 1970 was $197,400.00. In addition, "beyond line costs" chargeable to this line were $233,800.00 for 1969 and $134,800.00 for the first nine months of 1970.

The line is now operated solely for freight service. Carload traffic on the line has declined 43 per cent from 1960 to 1969. Gross freight revenue for the first seven months of 1970 declined 8 per cent from the corresponding 1969 figures.

The line, until recently, has had a profitable operation. The profit was approximately $143,500.00 in 1969 and $66,700.00 for the first seven months of 1970. In the period of August and September, 1970, the line showed a loss on operations of approximately $14,600.00.

The largest single source of revenue for the line has been from inbound rail shipments of coal to the mill of the Franconia Paper Corporation at Lincoln. This corporation has been through reorganization under the Bankruptcy Act. It has ceased to operate its mill at Lincoln and is attempting to sell the property rather than resume operations. While there have been negotiations with a prospective purchaser over a period of seven months, no agreement has been reached. It cannot be found at the present time that there is any firm prospect that paper manufacturing will be resumed at the mill in Lincoln. Furthermore, it is doubtful that any future operation of the mill would use coal. There was evidence that coal is not as efficient as oil for the production of steam for paper manufacturing and that all the competitive New England paper mills have converted from coal to oil. Rail rates for the transportation of oil in this area are not competitive with truck rates. Hence, it is unlikely that even a full-scale resumption of paper making at Lincoln would bring any substantial amount of revenue on this line.

In the absence of the revenue formerly received from coal shipped to Lincoln, the continued operation of the line over the next five years would result in an annual average operating loss of $181,-000.00. The salvage value of the line, including the land, is approximately $872,000.00.

The evidence of some prospective increase in revenue from other shippers, such as manufacturers of wood chips, or of some reductions in costs by reduction in the number of employees on the line, does not show any reasonable possibility of eliminating any substantial part of the prospective loss.

The debtor, of course, is now insolvent and in reorganization. The operating loss for the system has been increasing and for 1970 amounted to approximately $10,000,000.00.

There is no reasonable prospect that this line can be operated in the foreseeable future at other than a substantial loss, and such operation would jeopardize the preservation of the estate of the debtor as a going concern. The conclusion is that abandonment of this line would be in the best interests of the estate of the debtor and of ultimate reorganization.

The second line involved is a line of 3.84 miles in length between Northfield and Franklin Falls. Carload traffic de-

clined 63 per cent between 1960 and 1969, and there was a further decline in gross freight revenue in the first nine months of 1970. The average annual operating loss over the next five years will be approximately $8,000.00. The operation of this line would be physically impossible in the event of the abandonment of the Concord-Lincoln line, which furnishes its only connection to petitioner's other line. In this case, too, the Court finds that abandonment of the line would be in the best interests of the debtor's estate and of ultimate reorganization.

The petitions for authorization to apply to the Interstate Commerce Commission for leave to abandon the Concord-Lincoln and Northfield-Franklin Falls lines are allowed.